## Omohundro's Estate.

Evidence from acknowledgment and cohabitation, in connection with other circumstances in this case, insufficient to establish a previous marriage between a master and a slave emancipated by will.

May 26th 1870.    Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

Appeal by the Commonwealth from the decree of the Orphans' Court of *Lancaster county* in the distribution of the estate of Silas Omohundro, deceased.

The decedent was a resident of Richmond, Virginia, where he died about July 1st 1864, leaving real estate in Pennsylvania. He left a will dated at Richmond, March 16th 1864, and proved there on the 4th of July; admitted to probate by the register of Lancaster county, Pennsylvania, on the 4th of November 1865, and letters of administration c. t. a. granted to William Carpenter.

The parts of the will material to the case are as follows :—

"In the first place I do absolutely emancipate and for ever set free, from all manner of servitude, my woman, Corinna Omohundro, and her five children, Alice Morton Omohundro, Colan Omohundro, Riley Crosby Omohundro, William Rainey Omohundro and George Nelson Omohundro, and who are also my children. I give and devise to the said Corinna Omohundro, for and during her natural life and for her sole use and benefit, my entire lot on Seventeenth street, in the city of Richmond, with all the buildings thereon and other improvements, including the jail.   This lot I give the said Corinna as a place of residence, but if after my death she should prefer to live and reside in the city of Philadelphia, then in lieu and stead of said lot on Seventeenth street, I give her, for her life, two adjoining lots, &c.  *  *  *  in Philadelphia; whichever of these lots she may select as her residence, &c.,  *  *  *  I desire it for her sole exclusive use and benefit, so that if she should marry this devise shall in no wise be for the use or benefit of her husband, or the property be in any wise subject to his debts, contracts or control.   I give to the said Corinna all my household and kitchen furniture of every kind, including silver plate and glass; I also give her all her wearing apparel of every kind, and the gold watch, chain and other appendages thereto which she now has in her possession; also I give her the two diamond finger-rings and diamond cross she now uses and all other pieces of jewelry she now has or may have in her possession at the time of my death.   At the death of the said Corinna Omohundro, I authorize and direct my executor, hereinafter appointed, to sell such of the lots before mentioned, and devise to her for life, as she may select as her residence, upon such terms as she may think proper, and divide equally the proceeds of said

16 P. F. SMITH—8

sale between her said children, Alice Morton Omohundro, Colan Omohundro, Riley Crosby Omohundro, William Rainey Omohundro, George Nelson Omohundro, and any other child she may have at the time of my death.

"I give to the said Colan Omohundro (my son) my gold watch and chain and appendages attached thereto.

"I emancipate and set free from all servitude whatever, my woman Agnes and her two children, Virginia and Waverly. I authorize, &c., my executor to sell the rest and residue of my whole estate, both real and personal, and collect whatever money may be due me, and to divide equally the proceeds, &c. * * * between the said Corinna Omohundro, Alice Morton Omohundro, Colan Omohundro, Riley Crosby Omohundro, William Rainey Omohundro, and George Nelson Omohundro, &c. * * * And as Corinna Omohundro has always been a kind, faithful and dutiful woman to me, and an affectionate mother, and will continue to be so, and bring up her children in a proper manner, I direct my executor to pay over to her semi-annually, the interest arising upon the investments he may make of the legacies given to her said children, that she shall apply the same to her and their support, maintenance and education, paying, &c. * * * Should either of my said children, Alice M. Omohundro, &c. * * * die, &c.

"In conclusion, I declare my sole purpose in making this my last will, is to give my whole estate, of whatever it may consist (except Agnes and her children), to Corinna and her children, in the manner specified in it. And as my good friend, Richard Cooper, of Warrenton, Fauquier, Virginia, knows this, I appoint him my sole executor, and beg that he will qualify as such."

The administrator c. t. a. settled an account which was confirmed June 18th 1866, showing in his hands a balance of $6549.76, arising from sales of real estate in Pennsylvania.

The distribution was referred to George M. Kline, Esq., as auditor. Before him the Commonwealth claimed to have collateral inheritance tax, on the ground that Corinna and the children were not the widow and lawful children of the decedent. The auditor so found, and reported in favor of the Commonwealth. The Orphans' Court confirmed the report. There was no appeal from the decree of confirmation.

The administrator c. t. a., February 13th 1869, filed a final administration account, which showed in his hands a balance of $21,592.18, the proceeds of real estate in Pennsylvania. It was referred to H. B. Swarr, Esq., as auditor for distribution. Before him the Commonwealth claimed that the fund was subject to collateral inheritance tax, which was resisted by Corinna Omohundro and her chidren, she claiming to have been the wife of the decedent.

[Omohundro's Estate.]

The following was the evidence on this point.—William Car-. penter testified that in 1857 the decedent introduced Corinna to witness as his wife, having with them at the time two children, who he said were their children; he also introduced Mrs. Cheatham to witness as his wife's sister. This was in Lancaster, decedent being then a resident of Virginia; she lived with him there; they were in Lancaster a week or ten days; she returned with him to Virginia.

Michael O. Kline said he met the decedent on many occasions during 1857, 1858 and 1859. Corinna made two visits with him and his children to Lancaster, he living at the time in Virginia; he introduced Corinna to witness and his family as his wife; two of the children were living with Mrs. Cheatham, whom he called his sister-in-law; he manifested great anxiety on their behalf.

A. W. Rand, of Philadelphia, testified:—" I was personally acquainted with Silas Omohundro, in his lifetime; he formerly resided in Richmond, Virginia; I am also personally acquainted with Corinna Omohundro, his wife, and with his children; I have had business transactions with the said Silas Omohundro, late deceased; I have met him and his wife and family in Philadelphia on different occasions; the said Silas Omohundro and the said Corinna Omohundro lived together as man and wife; she was introduced by him in society as his wife, in conversation, in presence of deponent and others, and in presence of their children he called her wife, and on every occasion acknowledged her as his wife, both in public and in private; they were looked upon and regarded as man and wife by those with whom they associated."

The auditor found " That Silas Omohundro and Corinna Omohundro were married, and that she is the lawful widow of the decedent, and that their children named in the will as legatees, the issue of this marriage, are legitimate.

" From this it results that the Commonwealth is not entitled to a collateral inheritance tax on any of the legacies to the widow or children of decedent."

After exceptions on behalf of the Commonwealth, the Orphans' Court confirmed the report of the auditor.

This was assigned for error on appeal by the Commonwealth to the Supreme Court.

*E. Franklin* and *F. Carroll Brewster*, Attorney-General, for the Commonwealth, appellant.—The former finding is conclusive of the question: Lewis v. Nenzel, 2 Wright 222; Man v. Drexel, 2 Barr 202; Souter v. Baymore, 7 Id. 415; Walker Township v. W. Buffalo Township, 1 Jones 95; Aspden v. Nixon, 4 Howard 467; Railroad Co. v. Erie, 1 Grant 212; Tams v. Lewis, 6 Wright 410.

[Omohundro's Estate.]

*I. E. Hiester* and *W. W. Brown*, for appellees, cited 3 Chitty's Pl. 929, 930; 1 Greenl on Ev., § 532.

The opinion of the court was delivered, July 7th 1870, by

AGNEW, J.—It seems to us the auditor made a plain mistake in inferring a marriage between Silas Omohundro and Corinna his slave from the testimony of those who heard him declare her to be his wife while on their visits to Pennsylvania. The fact of marriage is contradicted by the will and by all the circumstances. Corinna and her children both claim under this will the property which is sought to be taxed as a collateral inheritance. Nowhere in the will is she denominated his wife, or is it intimated that she sustained such a relation to him, while he expressly calls her his " woman," and emancipates her and her children from all manner of servitude. At one place the will speaks of her as a " kind and faithful woman to him," and at the same as an " affectionate *mother* to the children" whom he acknowledges as his, presenting her relations to himself and the children in strong contrast. He uses similar language in respect to another female slave whom he emancipates—" his *woman* Agnes, and her two children, Virginia and Waverly." He stamps upon his will still more clearly his meaning and intent in its final paragraph when he says, " In conclusion I declare my *sole* purpose in making this my last will is to give my whole estate of whatever it may consist (*except Agnes and her children*) to Corinna and *her* children in the manner specified in it." It is evident that he knew that Corinna and her children sustained no legal relation to him, which could entitle them to his estate without a will; and the exception of Agnes and her children out of his property exhibits the relation of servitude she sustained to him, a relation existing and described in the same language on part of Corinna.

Independently of the will the circumstances repel a presumption of marriage. Silas Omohundro lived in a slave state, Corinna was his slave, and three of his children were born as early as 1857. There is no probability, owing to this relation, of a prior emancipation and actual marriage, while not a word of proof has been given of their cohabitation as husband and wife in Virginia. The proof should come from Virginia, and not from Pennsylvania, where Corinna came merely on a visit twice in his company. That he should call her his wife in this state is not strange. He could not indulge in the practice of concubinage with her in this state, as he had done in Virginia, without subjecting himself to reproach, and perhaps to banishment. The evidence of marriage relied on by the auditor was very weak, and was overborne by the will and the nature of the circumstances.

The decree of the Orphans' Court is therefore reversed, and it is decreed that the Commonwealth is entitled to the collateral

inheritance tax, to be levied and collected of the estate of the testator, found within this state, according to law; and the record is ordered to be remitted to the Orphans' Court of Lancaster county to carry this decree into effect, the costs to be paid out of the estate.