## Commonwealth v. Tucci.

*C. A. Snyder,* District Attorney *(H. O. Bechtel* with him), for Commonwealth.

*A. D. Knittle* and *C. M. Palmer,* for defendant.

KOCH, P. J., July 22, 1929.—The reasons assigned in support of the motion are that the verdict is against the law and against the evidence, and that the court erred in its rulings on the admission of evidence and in its charge to

the jury. We had been asked to direct a verdict, and our refusal to do that is also assigned as one of the reasons in support of the motion.

The Commonwealth offered an exemplified copy of the record of the County of Cecil, State of Maryland, showing an application for a marriage license to be issued to Nicola Tucci and Stella Tassone, and showing that they were married, certified to by the clerk of the court of said county on Feb. 14, 1929. This was offered to show the relationship of the defendant to the party with whom he is charged with having committed adultery. Inasmuch as the said Stella Tassone is the woman with whom the defendant is said to have committed adultery, we think the evidence was clearly competent. The father of the woman had previously testified that the defendant showed the marriage certificate at the hearing before the committing magistrate, and said: "Don't scold; this is my wife," and "There, that is my wife." These matters were introduced to prove illicit intercourse between the defendant and Stella Tassone. The testimony was offered in connection with an offer to prove the defendant's prior marriage to another woman then living. The offer of this testimony was followed by other testimony tending to prove the prior marriage of the defendant.

The defendant's counsel earnestly objected to the admission of such testimony because it tended to prove another crime, to wit, bigamy, and might, therefore, be prejudicial to the defendant.

"It is quite true that, as a general rule, a distinct crime unconnected with that laid in the indictment cannot be given in evidence against the prisoner. All our authorities are in accord with this proposition. . . . If the offense disclosed by the testimony sought to be introduced is unconnected with that charged in the indictment being tried, that is to say, that the two have no common element, and the facts with respect to the one are not required to supplement or explain the facts appearing in the trial for the other or later offense, then it must be said that the two offenses are distinct and separate, and the evidence would be irrelevant and inadmissible. It often happens, however, that the two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and, in such case, [on] the prosecution for the one, evidence proving the other [the one] cannot be excluded because it also proves the other:" Com. v. Coles, 265 Pa. 362, 366. In the case just quoted, Mr. Justice Stewart quotes from Corpus Juris, col. 16,588, as follows: "The general rule cannot be applied where the facts which constitute distinct offenses are at the same time part of the transaction which is the subject of the indictment. Evidence is necessarily admissible as to acts which are so clear and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible:" Com. v. Coles, 265 Pa. 366, 367.

If one were being tried on a charge of larceny, and the theft had been committed in an act of burglary, the testimony of such act could not be excluded just because it proved another crime. The fact would be at the same time part of the transaction which would be the subject of the indictment.

Illicit intercourse, as a rule, can be proved only by circumstances, and the alleged marriage of the parties and their cohabiting are powerful circumstances from which to infer illicit intercourse. The testimony of a number of witnesses clearly shows that the defendant and Stella Tassone were living together in the same house.

The Commonwealth undertook to prove that the defendant had previously been married in the Borough of Brognaturo, Italy, and for that purpose

offered in evidence a certified copy taken from the Records of the Acts of Matrimony of the Borough of Brognaturo in the year 1919. It purported to be signed by the officer of the Civil State with the seal of the Borough of Brognaturo, vised to legalize the signature of Mr. Anghera, Chancellor, delegate of the Tribunal of Vito Valenta, with the seal of the Court of Appeal, and then vised for the legalization of the signature of the First President of the Court of Appeal by the Procurator General and certified to by the American Consul. The offer was objected to on the ground that the copy was not properly authenticated. The paper shows that a copy of the record was certified at the request of Tassone Gregorio. It says: "Copy of the original at the request of Tassone Gregorio."

We admitted the certificate under the defendant's objection.

The Rev. G. Stephano, an Italian priest located in the City of Pottsville, made a translation of the certified copy. His translation was marked as an exhibit, and the defendant's counsel admitted that the translation is correct. But the defendant objected to the exhibit as mere hearsay and subject to cross-examination, and we sustained the objection. Neither the original certificate nor its translation appear on the transcript of the testimony, nor among the record papers of the case.

The defendant is a cousin to the prosecutor's wife. He boarded with the prosecutor's family for two years and four months.

The Commonwealth called Mrs. Cathereine Fotti as a witness. She resides in Pottsville, Pa., but is a native of Italy. She lived in Spatula, an adjoining town to Brognaturo, where she says she knew Tucci's wife, whom she last saw in Brognaturo on May 8, 1921. She saw the wife twice there with the defendant, who was then her husband. She testified: "I know that she was married with him. . . . I wasn't at the wedding." Her only knowledge of the fact of their marriage is, "that they all says that she was married." "In Old Country they says that she was his wife." On one occasion, when she saw the defendant and his wife together in the Old Country, his wife said she was going for milk for the baby.

In Chambers v. Dickson, 2 S. & R. 475, which was an action of dower, Chief Justice Tilghman held that cohabitation and reputation are good evidence to be left to a jury to prove marriage. He said: "It is not pretended, however, that proof of actual marriage has been held necessary by any decision in this state; we feel ourselves at liberty, therefore, to consider the point on principles of general convenience and expediency. There is no reason, in the nature of the thing, why a woman should not receive dower on such proof of her marriage as should be satisfactory to the jury." In reference to the case just cited, Mr. Justice Gibson cited it in Forney v. Hallacher, 8 S. & R. 162, saying: "In Chambers v. Dickson, 2 S. & R. 475, it is well remarked by the Chief Justice, that in establishing rules of evidence, arguments from inconvenience have great weight; and that we must pay great attention to the situation in our own country, which is not in all instances adapted to regulations that are very proper in other countries. To say that an action for criminal conversation could not be sustained without proving the marriage by a witness who was present at the ceremony would be to grant an almost unlimited license to inflict this species of injury with impunity."

In an action to recover damages for the alienation of a wife's affections, an actual marriage was not proved. The court below was affirmed for saying: "These people were recognized in the community as being married; they lived together for years and had children, and that, perhaps, will be entirely sufficient to satisfy the jury of the marriage. If it required actual proof of

marriage between a man and a woman, it would be a very difficult thing for most of us, particularly very old people, and more particularly people coming from another country, where they were married, to produce evidence that would clearly and unquestionably establish the fact. Therefore, cohabitation, reputation and general surroundings that indicate the reasonable probability of the conclusion that the parties were married are recognized as being sufficient evidence to establish that fact:" Durning v. Hastings, 183 Pa. 210.

In the case before us Mrs. Fotti testified that everybody at the place of their domicile said the defendant and a certain woman were married. This proved a general reputation and is competent evidence: Brinckle v. Brinckle, 12 Phila. 232. The reputation existed at the place of the domicile of the defendant and his reputed wife. The evidence was, therefore, competent: Yardley's Estate, 75 Pa. 207; Omohundro's Estate, 66 Pa. 113.

The defendant took the stand in his own defense, but was only asked what was his name, to which he answered, "Nicola Tucci." He did not deny what Mrs. Fotti testified to, and his silence respecting her testimony would seem to be confirmation of it.

We are, therefore, of the opinion that, independent of the certificate of the Marriage Acts of Brognaturo, the evidence was sufficient to send the case to the jury. So we deem unnecessary further discussion of the reasons assigned in support of the motion for a new trial.

The motion in arrest of judgment for a new trial is overruled, and Monday, Sept. 9, 1929, at 10 o'clock A. M., is fixed as the time for the defendant to appear and receive his sentence.

From M. M. Burke, Shenandoah, Pa.